SCANNED at PCC and E-Mailed
ce-21-18 (date) by DP (initials)
19 (# of pages)

In the U.S. Dist. Crt. for the Central Dist. of Il. Peoria Div.

Samuel Span #R12605 ) Case No. 1:18-cv-01078
Plaintiff )
-vs- ) Judge: James E. Shadid
Michael Melvin, Emily Ruskin, )
Kelly Renzi, John Sokol, Sara Cheshareck, )
Andrea Moss, ~~Barbra Browning~~, )
~~Crystal Carlson~~, Jessica L. Otto, )
Kayleigh Ortega, ~~Melvin Hinton~~, )
Lt. Leo Smith, Andrew Kroninga, )
Michelle Howell, John and )
Jane Doe And Il. Dept. of )
Corrections Defendants. )

~~Amended~~

<u>First Amended Complaint</u>

Plaintiff brings this Action pursuant to 42 U.S.C. §1983 to Redress violations of plaintiffs rights under the Eighth And Fourteenth Amendments of the U.S. Constitution, And pursuant to the Americans with Disabilities Act, 42 U.S.C. §§ 12131 et seq; ("ADA") And the Rehabilitation Act, 29 U.S.C. § 794.

Pg 2.

Defendants and other Relevant persons/
"Entities"

1) Defendant: Michael Melvin, was At relevant times Chief Administrative officer of Pontiac Correctional Center, And had ultimate Oversight and Approval Authority over the Daily Operations of Pontiac C.C. plaintiff Sues him in his Individual and official Capacity for Injunctive relief and Money Damages.

Defendant Melvin Had final Say So over the placement of Plaintiff on "Suicide Watch" and the materials plaintiff may or may not Receive while on Suicide Watch. By Allowing plaintiff to be placed on "Suicide Watch" for twenty-eight Days, Which is not "Temporary". with no cloths, & mattress, Thus forcing him to Sleep on Concrete, And being left in A cell 24/7 with the lights on all Day and night Causing Sleep Deprivation and the exacerbation of his mental illness Symptoms. Plaintiff would not have Suffered a lengthy Stay on Suicide Watch had Michael Melvin given the finale Approval. The Eleventh Amendment prohibits Suits for money Damages for violations of the 'ADA', "Rittenhouse .v. Board of trustees of S. Ill. Univ., 628 F. Supp. 2d 887, 892 (S.D. Ill. 2008) However under the Rehabilitation Act money Damages Can be Sought. So Claim Against Melvin is being Brought under the 8th Amendment, 14th Amendment The "A.D.A" for injunctive Relief and the Rehabilitation

Pg. 3

Act for money damages.

2) Emily Ruskin: was at relevant times and still is warden of programs @ Pontiac Correctional Center. As her duties of warden of programs she had control and oversight of the "Residential treatment unit / mental health unit" @ Pontiac c.c. The unit which plaintiff resides. Plaintiff sues Ruskin in her individual and official capacity for injunctive relief and money damages. Defendant Ruskin has oversight and say so over the placement of plaintiff on "Suicide Watch" and the materials plaintiff may or may not receive while on Suicide Watch by her being warden of programs and the mental health / residential treatment unit is considered "a program unit". By allowing plaintiff to be placed on "Suicide Watch" for twenty-eight days, which is not "temporary," with no cloths, and mattress; thus forcing him to sleep on concrete, and being left in a cell where light was left on 24/7 causing sleep deprivation and the exacerbation of plaintiffs mental illness symptons. Plaintiff would not have suffered a lengthy stay on Suicide Watch had 'Ruskin' not given approval. The Eleventh Amendment prohibits suits for money damages for violations of the 'A.D.A'; Rittenhase vs. Board of Trustees of S. Ill. Univ, 628 F. Supp. 2d 887, 892 (S.D. Ill. 2008) However under the Rehabilitation Act money damages can be

Sought. So Claim Against "Ruskin" is being Brought under the 8th and 19th Amendment, The A.D.A. for injunctive Relief and the Rehabilitation Act for Money Damages.

3) Kelly Renzi: Defendant Renzi is and was At Relevant times Mental health Administrator at pontiac c.c. As mental health Administrator her Duties Consist of the Daily operations that pertain to the placement, treatment, and Care for Mentally ill offenders. No offender can be placed on or taken off of Suicide Watch Status without the finale Approval of Defendant DR. Kelly Renzi. Also Any materials that an offender may or may not Receive while on Suicide Watch Must first be Approved or Denied by Defendant Renzi. Dr. Renzi never Approved plaintiff for A Mattress, eventhough he was not Suicidal, And Kept plaintiff on "Ten Minute watch Status" And 'Watch Status' for twenty-eight Days. Thus forcing plaintiff to Sleep on Concrete and be left in a cell where light Stayed on 24/7 Causing Sleep Deprivation And the exacerbation of plaintiffs mental illness Symptons. plaintiff would not have Suffered lengthy stay on Suicide Watch Had not Defendant Renzi given Approval As Mental health Administrator. The Eleventh Admendment prohibits Suits for Money Damages For Violations of the 'A.D.A', However under the rehabilitation Act money Damages can be Sought. So claims Against 'Renzi' is

being brought under the 8th & 14th Amendments, The "A.D.A." for Injunctive relief And the rehabilitation Act for Money Damages.

4) John Sokol: Defendant Sokol was at relevant times Director of the Residential treatment unit/mental health unit @ pontiac c.c. The unit where plaintiff Resides. As Director of this unit his duties consisted of the Daily planning and operations of this unit plus the overseeing of Treatment And therapeutic Services of mentally ill offenders in this unit Such as plaintiff. Also Dr. Sokol's duties Consisted of "Daily follow ups" or "Daily Assessments" for offenders on "Suicide watch Status". Part of his Duties during these Daily Assessments is to determine which level of watch Status An offender Should Remain on. I.e. 10 min watch — The Highest level of watch status — 15 min watch - moderate level of watch Status — 30 min watch - lowest level of watch status —

offenders on Ten min watch Status Receive no cloths, Mattress or Hygiene products. And Are Subjected to "Wellness Checks" every Ten mins. This Means every ten mins an officer must Check on offender And receive Some form of response from offender to know that offender is well. So even when plaintiff was Sleep he had to be Awoken every ten mins for wellness Check. Eventhough plaintiff never indicated that he wanted to harm himself or Anyone else Defendant Sokol

P36.
Refused to make any Recommendation for plaintiff to move up from Ten min. Watch Status, nor did he make any Recommendation for plaintiff to Receive cloths or a mattress. Defendant had no psychological or penological Reasons for not making these Recommendations. In fact Defendant Sokol made ~~his~~ Recommendations that plaintiff Remain on Ten Min. Watch Status.

Defendant is being Sued in his individual and official Capacity for Injunctive Relief And Money Damages.

5). Sara Cheshareck: Defendant Cheshareck was at relevant times a mental health professional in the mental health unit @ pontiac c.c. whose Duties Consisted of Daily Assessments for offenders on "Suicide Watch Status." During her Assessment of plaintiff ms. Cheshareck ordered that plaintiff Remain on Ten min. Watch Status Thus preventing him from receiving cloths or a mattress. Her Recommendation that plaintiff Remain on Watch Status Served no psychological or penological Reasoning. And only served to cause plaintiff to Suffer.

6) Andrea moss: Defendant moss was at relevant times a mental health professional in the mental health unit @ pontiac C.C. Whose Duties Consisted of Daily Assessments for offenders on "Suicide Watch Status". During her Assessments of plaintiff ms. moss ordered that plaintiff Remain on

Ten min. watch Status thus preventing him from receiving cloths or a Mattress. Her Recommendations that plaintiff Remain on watch Status Served no psychological or penological Reasoning and only Served to cause plaintiff to Suffer.

7) Michelle Howell: Defendant Howell was at Relevant times a mental health professional in the mental health unit at Pontiac C.C. whose Duties consisted of Daily Assessments for offenders on "Suicide Watch Status". During her Assessments of plaintiff Mrs. Howell ordered that plaintiff Remain on a ten min watch Status thus preventing him from receiving cloths, mattress, Hygiene. Her Recommendations that plaintiff Remain on watch Status Served no psychological or penological Reasoning and only Served to cause plaintiff to Suffer.

8) Jessica L. Otto: Defendant Otto was at Relevant times a mental health professional in the Mental health unit at Pontiac C.C. whose Duties consisted of Daily Assessments for offenders on "Suicide Watch Status". During her Assessment of plaintiff Ms. Otto ordered that plaintiff Remain on a ten min. watch Status thus preventing him from Receiving cloths, mattress, Hygiene. Her Recommendations that plaintiff Remain on Watch Status Served no psychological or penological Reasoning and only Served to cause plaintiff to Suffer.

9) Kayleigh Ortega: Defendant Ortega was at relevant times a mental health professional at Pontiac's mental health unit. On Oct. 2nd 2017 Defendant Ortega ordered that plaintiff be placed on a ten min suicide watch status. His placement was in response to plaintiff telling her that "Due to ongoing events he may have to 'Defend' himself against Security Staff. A ten min. watch status consist of plaintiff being stripped naked and placed in a bare cell with no mattress, Hygiene or any property other than a "Suicide Blanket and Smock." Offender on watch status must have cell lights on 24/7 for observation. Plaintiff never expressed any thoughts of self harm nor thoughts of harming others so the initial placement on suicide watch status served no penalogical or psychological reasoning and only caused plaintiff to suffer.

10) Cheshareck, Moss, Otto and Ortega are all being sued in their Individual and Official Capacity. Plaintiff is suing them for Injunctive Relief for violation of his ADA rights and for money damages for violation of his Rehabilitation Act rights, and violation of his 8th and 14th Amendments.

11) Andrew Krominga And Lt. Leo Smith: Defendant Krominga was at Relevant times A Correctional ofc In the mental health unit at pontiac c.c.. Leo Smith was at Relevant times A Lieutenant in the mental health unit at pontiac c.c. on Oct. 2nd 2017 At the orders of Lt. Leo Smith Defendant Andrew Krominga placed Plaintiff in "leg Shackles" And placed him in Suicide cell, cell 205 in the mental health unit.. plaintiff, at the behest of Leo Smith, was left in ~~Shack~~ "Shackles" for two Days. while Sleeping the cuffs on the "Shackles" would "click" tighter Around plaintiffs lower legs. By Day two Both of plaintiffs legs were Swollen and the Shackles were embedded in his flesh. not only Did plaintiff endure pain for two days But was left with Scars on both lower legs. leaving plaintiff in Suicide cell with leg Shackles on for two Days Served no psychological or penological purpose. It only caused plaintiff to Suffer unnecessarily. Both Defendants, Leo Smith And Andrew Krominga, Are being Sued in their individual and official capacity, for violating plaintiffs 8th, 14th, Admend. ADA And Rehabilitation Act rights. Plaintiff is Suing for Injunctive relief for violation of his "A.D.A." rights And for Money Damages for violation of his 8th And 14th Amendment Const. rights And for violation of his Rehabilitations Acts rights.

## Events And facts Relevant to Complaint

12) Plaintiff suffers from Serious mental illness And/or Conditions of mental illness that has been Recognized by mental health Staff in I.D.O.C.
I.D.O.C. Considers And/or has classified plaintiff as being Seriously mentally ill. Plaintiff Suffers from "Schizophrenia, Depression, Post traumatic Stress Disorder, Hallucinations, Anti-Social personality Disorder and Bi-polar Disorder. Plaintiff Also has A history of Self Harm And Suicide Attempts.

13) On Oct. 2nd 2017 plaintiff was Seen by mental health employee "Mrs. Kayleigh Ortega" at his Request. Plaintiff presented Mrs. Ortega — A mental health professional — with A note, via Security Staff, Stating that he felt that Due to on going events he may have to "Defend" himself against Security Staff. At this point Mrs. Ortega proceeded to place plaintiff on A "ten minute Suicide Watch." Plaintiff who was at this time (And Still is) housed in

14) Pontiac Correctional Centers mental health unit / Residential treatment unit. Plaintiff was escorted from the "interview Room" in the mental health unit to the "Suicide Watch Cell" (Cell 205) in the mental health unit by ofc. Andrew Krominga (~~Krominga~~) and another unknown officer. Before being placed in cell plaintiff was stripped naked and placed in a "Suicide Smock" and secured in restraints, ie. Handcuffs and shackles.
Once plaintiff was placed in cell (Cell 205) he was given a "Suicide Blanket" and no mattress. His handcuffs were removed but his "Shackles" were left on his legs. Plaintiff inquired as to why shackles were not being taken off. Ofc. Andrew Krominga (~~Krominga~~) stated "Per Lieutenant Smith they stay on. You guys need to stop calling crisis on our shift." With that plaintiff was left in cell naked except for a "Suicide Smock" and a "Suicide Blanket", no mattress.
It should be noted that shackles were placed on plaintiff by ofc. Andrew Krominga (~~Krominga~~).
For two days, oct. 2nd 2017 to oct. 4th 2017, plaintiff was forced to not only wear the shackles but sleep in them. On oct. 4th 2017 shackles were removed from plaintiffs legs but at this point his lower legs/ankles were so swollen that the shackles became embedded in his flesh. Both ankles were swollen and had lacerations from the shackles.

15) For twenty-eight days, Oct 2nd 2017 - Oct 30th 2017, plaintiff was left on "Suicide Watch Status" eventhough plaintiff never once stated that he was suicidal. For approx. three weeks plaintiff was forced to sleep (when he was able to sleep) on concrete because he was not allowed to receive a mattress, because he was on a "Ten Minute Watch Status". A status that consisted of a wellness check every ten minutes, so when plaintiff tried to sleep he was awoken every ten minutes. Thus causing him to start hallucinating from lack of sleep and eventually "Shut Down" mentally and emotionally to the point where he could not verbally communicate with mental health staff (named mental health Defendants) who did his daily assessments.

16. On 11-14-17 plaintiff was seen by Medical Dept. at his request for severe nerve pain in lower back and hip associated with being forced to sleep on concrete for approx. three weeks while on Suicide Watch Status. Plaintiff was prescribed "Levetiracetam - 500mg" - A.K.A. "Keppra" which is a medication for nerve pain. Prescription ordered by Nurse Practition "Cheryl Hensen"

## Count 1

Violation of the eighth and fourteenth Amendments to the U.S. Constitution Against prison Authority Defendants, The Doe Defendants and mental health Defendants and Dir. John Baldwin.

19) Defendants, through their acts and omissions described Above, deprived plaintiff of his rights under the eighth and fourteenth Amendment to be free of cruel and unusual punishments.

20) Defendants, through their acts and omissions described above caused plaintiff unnecessary pain and suffering by placing him on "ten minute watch states", "watch states" for Approx 28 days when he neither expressed or attempted self harm, forced him to wear shackles for 48 hrs straight causing swelling and laceration in lower legs, forcing him to sleep on concrete for approx three weeks without a mattress, leaving him in a cell on watch states for 28 Days where cell light was kept on 24/7 And for three weeks was subjected to "ten minute wellness checks" every ten minute – meaning he was Awoken every ten minutes – thus Depriving him of sleep. Due to this sleep deprivation he suffered from hallucinations and a "psychological Break Down".

19.) The Defendants, through their actions subjected plaintiff to cruel and unusual punishment. The punishment included the extreme deprivations imposed upon him during his prolonged suicide watch that caused mental and physical hardship outside of that normally associated with daily prison life.

## Count II

Violation of the eighth and fourteenth Amendments to the U.S. Constitution and of plaintiff's liberty interest, Against All Defendants named. (Failure to provide medical care)

20.) Through their conduct described above, Defendants were deliberately indifferent to plaintiffs serious medical needs. Instead, through their conduct, Defendants punished plaintiff for his mental health conditions and denied plaintiff adequate treatment for, and infact exacerbated his mental health conditions by subjecting him to prolong "Suicide watch placement" And the harsh and humiliating conditions associated with it. This prolong suicide watch placement served no penological or psychological purposes.

## Count III

Discrimination Based on Disability Against Warden Michael Melvin, Dr. Kelly Renzi and Dr. Melvin Hinton, And the Doe Defendants. (Title II of the ADA)

21) Plaintiff is a qualified individual with a disability as defined under the ADA and its implementing regulations, including 42 U.S.C. §12131 (2) And §12102 (2). Plaintiff has mental and/or physical impairments that substantially limit one or more major life activities, has a record of having such impairments and is regarded as having such impairments. Plaintiff is hearing empaired and suffers from Schziophrenia along with others underling mental illnesses

22) Plaintiff meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by Defendants.

23) Defendants have discriminated against plaintiff on the basis of his disabilities in at least the following way(s).

(A) placing plaintiff on Suicide Watch Status as a punishment for reporting that he felt that he may have to defend himself against security.

(B) Refusing to provide plaintiff with proper and Adaquate mental health treatment while on "watch status". Despite Knowledge of his S.M.I

(C) Refusing to let plaintiff participate in "theraputic group Sessions while he was on "Watch Status" thus Causing his mental illnesses to exacerbate.

(D) failing to Reasonably accommodate plaintiff's Disabilities and instead Discriminating against him in ways that increase the Severity of and punished him for his mental health Conditions by Such methods as depriving him of Cloths, heat, A mattress, Sleep and Sanitery Surrondings.

## Count IV
Violation of the Rehabilitation Act Against named Defendants and Doe Defendants (Rehabilitation Act)

24) IDOC Receives federal financial assistance, thus making it Subject to Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 (A) And § 705 (A)

25) plaintiff is an otherwise qualified individual with A disability as Defined in the Rehabilitation Act And implementing Regulations. plaintiff has mental And/or physical

impairments that substantially limit one or more major life activities, has a record of having such impairments and is regarded as having such impairments. plaintiff is Hearing impaired and suffers from Schziophrenia and other underling mental illnesses.

26) Defendants have Discriminated against plaintiff on the Basis of his Disabilities in at least the following ways:

(A) placing plaintiff on Suicide watch Status As A punishment for Reporting that he felt that he may have to defend himself Against Security.

(B) Refusing to provide plaintiff with proper And Adequate mental health treatment while on "watch Status" Despite knowledge of his S.M.I.

(C) Refusing to Allow plaintiff to participate in "theraputic group Sessions" while he was on "watch Status" thus causing his mental illnesses to exacerbate.

(D) failing to Reasonably Accommodate plaintiffs Disabilities and instead Discriminating Against him in ways that increase the Severity of and punished him for his mental health conditions by such methods as Depriving him of cloths, heat, A mattress, Sleep and Sanitary Surroundings.

27) During plaintiffs 28 days on suicide watch status he received daily assessments by the following Defendants; John Sokol, ~~[illegible]~~ Sara Cheshareck, Andrea Moss, Jessica L. Otto, Michelle Howell. Each Defendant knew about cell conditions. i.e. lights on 24/7. When plaintiff inquired about this each Defendant replied "lights stay on for obersavation reasons". Plaintiff was assessed by at least one of these Defendants every day. Each Defendant knew plaintiff had no mattress because every day plaintiff would request mattress and explain that he was experiencing severe pain in lower back and hip due to sleeping on concrete. Every request for mattress was denied without reason. It should be noted that back and hip pains turned out to be nerve pain/damage caused by sleeping on concrete. During plaintiffs 28 day stay on watch status he went through a "psychological Break Down" that resulted in him receiving numerous "Disciplinary Reports" that resulted in him having some of his "privileges" restricted. This 'Break Down' was contributed to plaintiffs lack of sleep due to lights being left on 24/7. Which exacerbates his mental illness symptoms. Plaintiff suffered greatly for 2 days Oct 2nd 2017 - Oct 4th 2017 - from being forced to wear leg shackles for 48hrs. Shackles that caused his legs to swell and became embedded in his flesh, leaving him with permanent scars on both legs. Had plaintiff never been placed on a suicide watch status that served no penological or psychological purpose he would not have been subjected to this suffering.

pg. 19

28.) Plaintiff is Seeking injunctive Relief in the form of Restoration of his "lost privileges" And A transfer to A facility that is properly Staffed And equipped to house And treat Seriously mentally ill offenders. for violation of his "A.D.A." rights

29) Plaintiff is Seeking Compensation in the form of money damages for violation of his 8th and 14th Const. Rights And violation of the Rehabilitation Act.

30) Plaintiff Demands Jury trial.

31) Plaintiff prays that this court sees that he has exhausted All Remedies Available to him As in Accordance with the PRLA And grant his Relief.

Respectfully Submitted by,

Samuel Span #R12605
Pontiac Correctional Center
P.O. Box 99
Pontiac Il 61764

Date 6-20-18

/s/